UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REID GINTER, et al.,

      Plaintiffs,                            Case No. 1:08-CV-750

v.                                              HON. GORDON J. QUIST

WHIRLPOOL CORPORATION and
WHIRLPOOL CORPORATION GROUP
BENEFIT PLAN,

      Defendants.
                                  /

**OPINION**

Plaintiffs filed their class action complaint in this case on August 8, 2008, against Defendants, Whirlpool Corporation ("Whirlpool") and Whirlpool Corporation Group Benefit Plan (the "Plan"), alleging claims for breach of various collective bargaining agreements under the National Labor Relations Act, 29 U.S.C. § 152(5), and violation of a welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Presently before the Court is Plaintiffs' Motion for Class Certification. For the reasons set forth below, the Court will grant the motion, certify the Class, and appoint Class Counsel.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiffs, retirees or spouses of retirees who retired from Whirlpool's Mt. Sterling, Kentucky plant ("Mt. Sterling Plant") and Whirlpool's Newton, Iowa plant ("Newton Plant"), seek to represent a class of approximately 3400 retirees and spouses and surviving spouses of retirees of Whirlpool's Mt. Sterling and Newton plants.[1]  Whirlpool acquired the Mt Sterling Plant from the

---

[1] Plaintiffs state that Plaintiff Willie Bennett has recently informed counsel that he no longer desires to be a Class Representative.

Emerson Contract Division, Inc. in the late 1980s and assumed Emerson's obligations under Emerson's collective bargaining agreements ("CBA") with the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("UAW International") and UAW Local 1562. Whirlpool acquired the Newton Plant from Maytag Company in 2006 and assumed Maytag's obligations under its CBAs with UAW International and UAW Local 997.

Plaintiffs allege that Whirlpool and its predecessors were obligated by the CBAs to provide lifetime health and prescription drug benefits to the bargaining unit retirees of the Mt. Sterling and Newton Plants. Plaintiffs further allege that since acquiring the Mt. Sterling and Newton Plants and assuming the CBAs, Whirlpool has provided Maytag and Emerson hourly retirees with health care benefits, most recently under the Plan. Plaintiffs state that in 2006, Whirlpool unilaterally changed the health care benefits provided to Mt. Sterling Plant employees and, recently, Whirlpool has indicated its intent to make further changes to those benefits and to make similar changes to the health care benefits for the retirees of the Newton Plant to bring them in line with the benefits Whirlpool provides its other retirees.

On July 24, 2008, Maytag and Whirlpool filed an action in the United States District Court for the Southern District of Iowa, captioned *Maytag Corporation and Whirlpool Corporation v. United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW)*, et al., No. 4:08-CV-291 (the "Iowa Lawsuit"), seeking a declaration that they have the right to modify retiree health care benefits on January 1, 2009 for retirees and surviving spouses of retirees of the Newton Plant. In addition to suing the UAW and Local 997, Whirlpool and Maytag sued several individual retirees as representatives of a defendant class of retirees. The complaint in the Iowa Lawsuit alleged two counts: (1) Count 1 for declaratory judgment under § 301 of the LMRA; and (2) Count 2 for a declaratory judgment that Whirlpool's proposed modifications to healthcare benefits do not violate ERISA. Plaintiffs filed the instant action shortly thereafter, on August 8, 2008. On October

1, 2008, the Court heard oral argument on Defendants' Motion to Transfer Venue Under the First-To-File Rule and 28 U.S.C. § 1404(a) to the Southern District of Iowa, following which the Court entered an Order denying the motion.

In the instant motion, Plaintiffs request that the Court certify the following Class pursuant to Fed. R. Civ. P. 23(a) and (b):

a. Former hourly bargaining unit employees of the Newton, Iowa plant, and their eligible dependents, who retired on or before January 1, 2008 and who are eligible for retirement benefits under Maytag Retirement Plan and who a) had at the commencement of retirement, (1) ten years of service after age 50; (2) ten years of service after age 38; or (3) five years of service; or b) retired on a disability retirement; or c) retired under a special early retirement mutually agreed to by Maytag and the UAW;

b. Surviving spouses, and their eligible dependents, of retirees described in paragraph a.

c. Former bargaining unit employees of the Newton, Iowa plant, and their eligible dependents, who satisfied all the requirements for disability retirement benefits except that he/she lacked the required years of credited service;

d. Surviving spouses and eligible dependents of hourly bargaining unit employees of the Newton, Iowa plant who were eligible to retire but who died while in active employment;

e. Surviving spouses and eligible dependents of hourly bargaining unit employees of the Newton, Iowa plant who died as a result of accidental bodily injuries caused solely by employment with Maytag;

f. Former hourly bargaining unit employees of the Emerson Mt. Sterling, Kentucky plant who retired pursuant to the terms of collective bargaining agreements between Emerson and the UAW;

g. Surviving spouses and their eligible dependents of retirees described in paragraph f.

(Pls.' Mot for Class Certification ¶ 9.) Plaintiffs contend that the Class should be certified under Rule 23(b)(1) and/or (2).

## II. MOTION STANDARD

A district court has discretion to determine whether a case should proceed as a class action under Federal Rule of Civil Procedure 23. *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 761 (6th Cir. 2005 ) (citing *Mayer v. Mylod*, 988 F.2d 635, 640 (6th Cir. 1993)). The Supreme Court has instructed district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982). Before certifying a class, a district court must determine whether the action satisfies all four prerequisites in Fed. R. Civ. P. 23(a) and at least one of the conditions in Fed. R. Civ. P. 23(b). *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 996). The movant bears the burden of proof. *Id.* "Although a hearing prior to the class determination is not always required, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co.*, 457 U.S. at 160, 102 S. Ct. at 2372).

Rule 23(a) requires a plaintiff to demonstrate that the proposed class is sufficiently numerous; that it presents common issues of fact or law; that it will be led by one or more class representatives with claims typical of the class; and that the class representative will adequately represent the class. *See Gen. Tel. Co.*, 457 U.S. at 161, 102 S. Ct. at 2372. In determining whether a plaintiff meets the requirements for class certification, a court may not judge the validity of the plaintiff's claims. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (quoting *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983)).

## III. DISCUSSION

Initially, the Court notes that Defendants concur with Plaintiffs' request for certification of the Newton Plant retirees under Rule 23(b)(1) and (2). However, Defendants contend that certification of the Mt. Sterling Plant retirees is not proper, at least at this time, because their claims are covered by different CBAs than the Newton Plant retirees' claims and other documents render

the claims of the two groups dissimilar. Defendants thus assert that the Newton Plant retirees and the Mt. Sterling Plant retirees cannot proceed as a single class because the Mt. Sterling Plant retirees do not satisfy Rule 26(a)'s commonality and typicality requirements. In addition, Defendants contend that discovery is necessary to determine whether Reid Ginter, the sole Mt. Sterling Plant Class Representative, has a claim that is typical of, and will adequately represent, the Mt. Sterling Plant retirees. Defendants also raise two issues concerning the Newton Plant retirees. They contend that Plaintiff's proposed Class definition for the Newton Plant retirees is too broad and that any Class should be certified only as to liability, not damages.

### A.  The Newton Plant Class Definition

Although Defendants concede that a Class consisting only of the Newton Plant retirees is proper under both Rule 23(a) and (b), (Defs.' Br. at 6-7), they contend that Plaintiffs' definition regarding that group, consisting of paragraphs a. through e. of Plaintiffs' proposed definition, is improper. Defendants assert that "Plaintiffs' proposed definition is unnecessarily complicated, and, more importantly, is argumentative in nature." (*Id.* at 7.) Defendants contend that the following definition should be adopted:

> Newton Plant retirees (i) who are or were employee-participants (and/or their dependents and spouses) in the Maytag employee benefit plans that provided for retiree medical benefits, (ii) who worked at the Newton, Iowa plants and were represented in collective bargaining at the time of their retirement by the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America and its Local 997 (collectively, "the Union"), and (iii) who retired from Maytag and/or Whirlpool before July 31, 2008.

(Defs.' Br. at 7.)

Plaintiffs respond that their definition is neither complicated nor unnecessary, but instead is based upon the provisions of the CBAs concerning vesting of rights to lifetime, fully paid retiree health benefits. Plaintiffs note that in contrast with Defendants' proposed definition, Plaintiffs' proposed definition includes all former bargaining unit employees who are entitled to lifetime

5

benefits, such as employees who satisfied all of the requirements for disability retirement benefits but lacked the required years of credited service. Plaintiffs point out that Defendants' definition excludes this and other groups, without providing a reason for doing so.

The Court finds nothing argumentative or improper about Plaintiffs' proposed definition. Plaintiff's definition appears to cover all persons who may be entitled to health benefits, while Defendants' definition excludes some of these persons. Accordingly, the Court will adopt Plaintiffs' proposed definition for the Newton Plant retirees.

**B. Rule 23(a) Requirements**

**1. Numerosity**

Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Whether joinder is impracticable depends on the particular circumstances of each case. *Weaver v. Reagen*, 701 F. Supp. 717, 721 (W.D. Mo. 1988). Factors that a court may consider are class size, ease of identification of class members, and the ability of class members to pursue individual actions. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). A plaintiff need not prove the number of class members to a certainty. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 672 (N.D. Ohio 1995).

There is no dispute that the numerosity requirement is met in this case. The parties agree that there are at least 3,300 retirees and surviving spouses from the Newton Plant and approximately 82 retirees and surviving spouses from the Mt. Sterling Plant. The proposed Class is thus sufficiently numerous to make joinder impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members") (citing 1 Newberg On Class Actions, 2d, § 3.05 (1985 ed.)).

### 2. Commonality

The second prerequisite to class certification is that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class." *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *In re Am. Med. Sys.*, 75 F.3d at 1080). Cases alleging a single course of wrongful conduct are particularly suited for class treatment. *See id.* The threshold for commonality is "not high." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (2001)).

Defendants argue that Plaintiffs' proposed Class consisting of both the Newton and Mt. Sterling Plant retirees must be rejected because there are significant factual differences between the claims of the two retiree groups. Defendants point out that both groups were parties to different CBAs containing different language.[2] Defendants further note that apart from the CBAs, there are other documents not common to both groups which may affect each group's entitlement to health care benefits. First, Defendants state that the Newton Plant retirees were required to sign a document entitled "Maytag Corporation Employees Retirement Plan Application for Commencement and Normal Form of Benefit Payments and Election of Certain Optional Forms of Benefits," (the "Normal Form"), in which the retiree acknowledged: "I understand that all options are subject to the rules and requirements of the Retirement Plan legal document." (Strickland 4th Decl. ¶ 11 & Ex. A.) Defendants contend that this language shows that the Newton Plant retirees' benefits were negotiated and subject to change, but the same is not true for the Mt. Sterling Plant retirees, who were not required to sign the Normal Form. Second, Defendants state that all Mt.

---

[2] Although Defendants assert that the CBAs contain different language, they neither assert, nor attempt to show, that the provisions concerning health care benefits are materially different. Based upon its review of the record in this case, it appears that copies of the CBAs have not been filed, so the Court was unable to compare the different provisions. In any event, even materially different language would not affect the determination of whether a common question of fact or law exists.

Sterling Plant retirees signed a "Shutdown Agreement" in 1990 at the time that plant was closed, which governed the termination of the pertinent CBA for those hourly employees. In connection with the Shutdown Agreement, at least 29 of those retirees signed a form entitled "Waiver and Release" and at least 3 other retirees signed a form entitled "Release and Waiver," both of which contained language releasing all claims against Whirlpool in exchange for a lump-sum benefit.

The Sixth Circuit's decision in *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877 (6th Cir. 1997), answers and refutes Defendants' argument. In *Bittinger*, a retired hourly worker of the defendant brought an action on behalf of all such retirees alleging that the defendant violated the LMRA and ERISA by unilaterally altering their collectively bargained rights to lifetime insurance benefits. On appeal, the defendant argued that the district court improperly certified the class under Rule 23 because the commonality and typicality requirements were not met. The circuit court rejected both arguments. Regarding commonality, the court observed: "In the instant case, each class member claims that the original collective bargaining agreement guaranteed them lifetime, fully-funded benefits. This common question is all that is required under the Rule." *Id.* at 884. Next, addressing typicality, the court rejected the defendant's arguments, similar to those asserted here, that the claims of the class were not typical of the representative because: (1) not all of the retirees retired before the Sixth Circuit held that retiree benefits were the subject of mandatory bargaining; (2) approximately two-thirds of the retirees signed releases and enrolled in an alternate benefits program; and (3) management's representations to the class members were not made on a uniform basis to the class. The court concluded that none of these considerations detracted from the class members' overall claim that the defendant originally agreed to provide lifetime, fully funded benefits to retirees. *See id.*

Other courts have concluded that a common issue was present in similar cases, even where the class members' asserted entitlement to fully-paid lifetime benefits arose from different collective

8

bargaining agreements. For example, in *Golden v. Kelsey-Hayes Co.*, No. 93-74824 (E.D. Mich. Apr. 25, 1995), the Eastern District of Michigan held that a common question existed even though there were several different CBAs, negotiated by different local unions at different locations and at different times. The common question was whether the company lacked the right to change the benefits under any of the agreements and, thus, the class's claim focused upon the employer's single decision directed at all class members. (Slip Op. at 8-10.) Similarly, in *Moore v. Rohm & Haas Co.*, No. 5:03 CV 1342 (N.D. Ohio Nov. 19, 2007), the defendant argued that commonality was destroyed by materially different language in different CBAs, as well as by varying oral and written representations made to different employees at different company locations at different times. Relying on *Bittinger*, the Northern District of Ohio rejected the argument, noting that the fundamental legal question – whether the defendant was obligated to pay health care benefits to each member of the class of retirees – was the same for each class member. (Slip Op. at 11-12.). *See also Groover v. Michelin North Am., Inc.*, 187 F.R.D. 662, 667 (M.D. Ala. 1999) (noting that "[s]everal federal courts . . . have certified classes asserting [entitlement to fully-paid retiree medical benefits], even when class members asserted contractual rights under different agreements"); *Bower v. Bunker Hill Co.*, 114 F.R.D. 587, 594 (E.D. Wash. 1986) (holding that commonality existed with regard to both union and salaried class members even though the union members' medical insurance benefits were collectively bargained, while the salaried members' benefits were voluntarily extended, because the issue for both union and salaried class members was "whether the benefits constituted a vested right which could not be terminated by [the defendant]").

In the instant case, Plaintiffs and the Class claim that Defendants' announced intention to unilaterally modify the health care benefits for both the Newton Plant and Mt. Sterling Plant retirees to be commensurate with benefits provided to other Whirlpool retirees is contrary to Whirlpool's obligation to provide the Class fully-funded lifetime benefits under the CBAs. Under *Bittinger*, this

9

single common question satisfies the commonality requirement. As *Bittinger* observes, factual differences in class members' claims will not preclude certification, although such differences may ultimately require the court to create subclasses in order to properly determine separate factual or legal issues. *See Bittinger*, 123 F.3d at 884. Whether subclasses are necessary is an issue that may be left for another day. For present purposes, it suffices that an issue common to all class members is present. *See Powers*, 501 F.3d at 619.

### 3. Typicality and Adequacy

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The inquiry is whether the class claims are fairly encompassed by the named plaintiff's claims. *Id.* In other words, typicality is satisfied where there is a sufficient relationship between the injury to the named plaintiff and the conduct affecting the class, but it is not satisfied when the named plaintiff can prove his own claim but not "necessarily have proved anybody else's claim." *Sprague*, 13 F.32d at 399. However, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976). Thus, the possibility that some members may have different damages or none at all "does not preclude a finding that the typicality requirement is satisfied." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R Civ. P. 23(a)(4). This inquiry concerns whether class counsel are qualified and capable of conducting the litigation and whether the named class representatives have interests that are antagonistic to the class. *See Stout v. J.D. Byrider*, 228

F.3d 709, 717 (6th Cir. 2000). "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to 'vigorously prosecute the interests of the class.'" *Id.* (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083). "Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which will usually be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (internal quotations and citations omitted).

The claims of the Class Representatives are typical of the Class because the claims arise from the same course of conduct, namely, Defendants' intention to change Plaintiffs' and the Class's health benefits as of January 1, 2009. Plaintiffs and the Class members will suffer the same type of injury as a result of this conduct – a reduction in health insurance coverage. To the extent Defendants assert that the existence of different CBAs or forms or agreements applicable to some but not all class members renders Plaintiffs' claims atypical, the Court rejects such argument based upon *Bittinger*.

Although Defendants do not take issue with the adequacy of Plaintiffs Murphy, Poston, Robert and Carmen Vander Leest, and Davis as representatives of the Newton Plant retirees, they contend that discovery is necessary to determine whether the Mt. Sterling Plant retirees meet the requirements of Rule 23(a). More specifically, Defendants assert that they need to depose Reid Ginter, the sole Mt. Sterling Plant Class Representative, to determine whether his interest is antagonistic to that of the Class and to confirm whether he even wishes to represent the Class. Defendants contend that because Ginter did not sign either the "Waiver and Release" form or the "Release and Waiver" form, his interests may conflict with those of other Mt. Sterling Plant retirees.

11

The Court disagrees with Defendants regarding the need for discovery. First, as set forth in *Bittinger*, the fact that Ginter did not sign a release does not render his claim atypical of the claims of other Mt. Sterling Plant retirees. Discovery would not change this conclusion. Second, Defendants fail to provide any persuasive explanation why Ginter's interests would be antagonistic to the members of the Mt. Sterling Plant subclass. In other words, the Court has already found Ginter's claim typical of the Class claims, and there is no indication in the record that Ginter would not vigorously pursue those claims. Finally, Defendants fail to support their assertion that Ginter may not wish to represent the class. Plaintiffs point out that Ginter has submitted a declaration stating that he is willing to serve as a Class Representative and will represent the Class. In light of this declaration, there is no reason to question Ginter's willingness to serve as a Class Representative, just as there is no reason to question the other Plaintiffs' wishes to serve as Representatives and willingness to adequately represent the Class.

Apart from Plaintiffs' qualifications to serve as Class Representatives, the Court has reviewed Class Counsel's qualifications and concludes that counsel are amply capable of conducting the litigation. Plaintiffs have shown that their counsel, Roger J. McClow and David Radtke, as well as local counsel, Michael L. Fayette, all have significant experience in litigating labor and employment class actions, including extensive experience in retiree health care lawsuits. Thus, Class Counsel are fully capable of representing the Class.

### C. Rule 23(b)

Plaintiffs request certification under Rule 23(b)(1) and/or (2). Certification is appropriate under Rule 23(b)(1) if:

> prosecuting separate actions by or against individual class members would create a risk of:
> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

A class may be certified under Rule 23(b)(2) if:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(1) and (2).

In this case, certification is proper under both Rule 23(b)(1) and (2). Defendant Whirlpool has indicated its intent to modify health care benefits in a manner that would similarly affect all Class members. Regarding (b)(1), if several individual Class members filed separate suits challenging Whirlpool's threatened changes, a significant risk of conflicting outcomes would exist, possibly requiring Defendants to pay the full cost of some Class members' health care insurance while only partially paying the cost of other members' coverage. Because Whirlpool has indicated its intent to modify benefits for all Class members in a similar fashion, the Class may also be certified pursuant to (b)(2). If the Court concludes that Whirlpool is obligated to provide the benefits Plaintiffs claim, final injunctive and declaratory relief will be appropriate for the Class as a whole.

The final issue raised by Defendants is whether the Class should be certified only as to liability and not damages. Defendants contend that certification is proper only as to liability because the Sixth Circuit has said that certification should not be granted where the putative class seeks individualized compensatory damages. The Court declines to adopt Defendants' suggestion, primarily because the cases Defendants cite, *Reeb v. Ohio Department of Rehabilitation and Correction*, 435 F.3d 639 (6th Cir. 2006), and *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir. 2002), involved different circumstances. In those cases, damages were the

predominate form of relief sought by the class. *Reeb* involved class claims for sex discrimination under Title VII, while *Coleman* involved claims by a class of African American consumers under the Equal Credit Opportunity Act, and compensatory damages were the primary relief sought. In the instant case, Plaintiffs' claims for injunctive and declaratory relief are the predominate forms of relief sought. Moreover, as *Bittinger* observed, any differences in the level of injury to Class members "can be dealt with through [other] methods . . . at a later stage in the proceeding." *Bittinger*, 123 F.3d at 885.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Class Certification and appoint Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1).

An Order consistent with this Opinion will be entered.


Dated: January 23, 2009                    /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE